# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| RODNEY TURNER and EVELYN | § | |
| HASOURIS-TURNER, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-2178 |
| | § | |
| OXFORD MANAGEMENT | § | |
| SERVICES, INC., | § | |
|     Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiffs Rodney Turner and Evelyn Hasouris-Turner's Motion for Attorney Fees and Costs [Doc. # 42]. Defendant Oxford Management Services, Inc. ("OMS") has responded [Doc. # 48] and Plaintiffs have replied [Doc. # 52]. OMS does not dispute that Plaintiffs are entitled to recovery of some fees and expenses; OMS only disputes the amount Plaintiffs seek. Upon review of the parties' submissions, all pertinent matters of record, and applicable law, the Court concludes that Plaintiffs' Motion should be **granted in part** and **denied in part**. The Court awards Plaintiffs costs and fees totaling **$56,143.47**.

## I.     FACTUAL BACKGROUND

Plaintiffs filed this lawsuit in June 2006, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*., the Texas Debt

Collections Act ("TDCA"), TEX. FIN. CODE §§ 392.001 *et seq*., and the Deceptive

Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE § 17.41 *et seq*.  Plaintiffs

claimed that OMS engaged in unlawful conduct related to its attempts to collect on a

debt and sought $62,823 in damages.

Over the course of approximately sixteen months, the parties litigated this

matter and ultimately reached a settlement in October 2007, one month before trial

was scheduled to commence.  The parties completed discovery and much of the work

for the Joint Pretrial Order.

At the parties' joint request, the Court entered a consent judgment awarding

Plaintiffs $17,500 in statutory and actual damages and "reasonable attorney's fees and

costs."  Plaintiffs subsequently filed the pending motion and now request an award of

$62,739.17.[1]  OMS objects on various grounds to the amount sought and argues that

Plaintiffs should instead be awarded $34,893.40.

## II.   ANALYSIS

### A.   Attorneys' and Other Fees

#### 1.   Legal Standards

The parties do not dispute that Plaintiffs are entitled to recover attorneys' fees

---

[1]    Plaintiffs originally requested $65,756.65 in fees and costs, which they later reduced by $3,017.48.

and costs; at issue is the amount to be awarded.  Attorneys' fees requests in the Fifth

Circuit are governed by the "lodestar" analysis.[2]  *Forbush v. J.C. Penney Co.*, 98 F.3d

817, 821 (5th Cir. 1996).   The lodestar is the product of the number of hours

reasonably expended on the litigation by the movant's attorney(s) and the attorney(s)'

reasonable hourly billing rate.  *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 404 (5th

Cir. 2002); *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996).

In determining whether the amount of time expended on a matter is reasonable,

courts are to review time records supplied by the movant and exclude from the

lodestar calculation all time that is "excessive, duplicative, or inadequately

documented."  *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).  In setting a

reasonable billing rate, courts are directed to consider the attorney(s)' regular rates as

well as the rate "prevailing in the community for similar services by lawyers of

reasonably comparable skill, experience, and reputation."  *Blum v. Stenson*, 465 U.S.

886, 896 n.11 (1984); *see also La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328

(5th Cir.1995).  Where "the attorney's normal billing rate is within the range of

market rates for attorneys with similar skill and experience, and the trial court chooses

a different rate, the court must articulate its reasons for doing so." *Islamic Center of*

---

[2]     Texas law, which governs the award of attorneys' fees under the TDCA and DTPA, employs
a virtually identical analysis to that used by the federal courts.  *See Land Rover U.K., Ltd.
v. Hinojosa*, 210 S.W.3d 604, 607 (Tex. 2006); *Arthur Anderson & Co. v. Perry Equip. Co.*,
945 S.W.2d 812, 818–19 (Tex. 1997).

*Miss. v. Starkville*, 876 F.2d 465, 469 (5thCir. 1989).

Once the lodestar is determined, the court may adjust the figure upward or downward as necessary to make the award of attorneys' fees reasonable, *see Watkins*, 7 F.3d at 457; *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993), while ensuring that the fee award does not provide a windfall to the plaintiff, *see Kellstrom*, 50 F.3d at 328.   However, while the court has "broad discretion in setting the appropriate award of attorneys' fees," *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983), the lodestar is "presumptively reasonable and should be modified only in exceptional cases."  *City of Burlington v. Dague*, *see also Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).

In deciding whether to make an adjustment to the lodestar figure, the court is to consider the "*Johnson*" factors, which include:

1.  The time and labor required to represent the client(s);
2.  The novelty and difficulty of the issues in the case;
3.  The skill requisite to properly perform the legal services;
4.  Preclusion of other employment by the attorney due to acceptance of the case;
5.  The customary fee charged for those services in the relevant community;
6.  Whether the fee is fixed or contingent;
7.  The time limitations imposed by the client or circumstances;
8.  The amount involved and the results obtained;
9.  The experience, reputation, and ability of attorney(s);
10. The undesirability of the case;
11. The nature and length of the professional

relationship with the client;

     12.    Awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974); *see also Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 n.5 (5th Cir. 1999).  While the court is to "give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation, and ability of counsel," *Migis v. Pearle Vision*, 135 F.3d 1041, 1047 (5th Cir. 1998), the most critical factor in this analysis is the "degree of success obtained." *Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003) (citing *Romaguera v. Gegenheimer*, 162 F.3d 893, 896 (5th Cir. 1998)).  However, this factor alone does not require that the Court adjust a fee award. *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392 (5th Cir. 2000).  Moreover, "[t]he lodestar may not be adjusted due to a *Johnson* factor . . . if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting." *Saizan*, 448 F.3d at 800 (citing *Migis*, 135 F.3d at 1047).

### 2.    Lodestar Calculation

In calculating the lodestar figure, Plaintiffs bear the burden of demonstrating that the hours expended and rates charged by counsel are reasonable. *See Hensley*, 461 U.S. at 427.  In this case, Plaintiffs seek to recover fees paid to their two attorneys, Richard Tomlinson and Dana Karni, and to these attorneys' legal assistants

and law clerks.  Plaintiffs have provided detailed billing statements demonstrating that Tomlinson expended 124.65 hours on this case, at an hourly rate of $300; Karni reported working 116.60 hours at $175 per hour; and hours worked by Tomlinson and Karni's legal assistants and law clerks were billed at $75 per hour for a total of 98.70 hours of work.[3]  Plaintiffs subsequently reduced the amount of hours for which they seek compensation by 10.6 hours—2.6 hours from Tomlinson's bill and 8.0 hours from Karni's bill.[4]  They also concede that certain clerical tasks conducted by the attorneys and their staff should be compensated at $30 per hour.[5]  Thus, based on the

---

[3]  *See* Plaintiffs' Motion for Attorney Fees and Costs ("Motion") [Doc. # 42], ¶ 23.  Plaintiffs' billing statement was converted into an Excel spreadsheet by Defendants.  *See* Defendant's Opposition to Plaintiffs' Motion for Attorney Fees and Costs ("Response") [Doc. # 48], Exh. 1: "Fee Statement."  The Court requested an electronic copy of the document to facilitate calculation of Plaintiffs' fee award and requested that Plaintiffs notify the Court if the conversion of their bill to Excel had resulted in any error.  The only error identified by Plaintiffs was the alternation of "0.20" to "20" on one line of the spreadsheet.  *See* Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Attorney Fees and Costs ("Reply") [Doc. # 52], at 11 n.6.  The Court corrected this error.  In analyzing Plaintiffs' Motion, it appears that many of the figures cited in the text of Plaintiffs' motion are in error.  However, the Court calculated the award granted herein independently, so any errors in the parties' calculations have been corrected.

[4]  *See* Plaintiffs' Reply [Doc. # 52], at 10 n.5, 13, 16 n.8.

[5]  *See id.*, at 19–20.  Hours worked by attorneys and staff may be compensated at reduced rates for "purely clerical or secretarial tasks" and for paralegal work such as "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989); *Walker v. U.S. Dep't of Housing & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996).  Plaintiffs, citing recent case law setting compensation for clerical work $30 per hour, accept that clerical work conducted by their attorneys and staff should be compensated accordingly. *See Feezor v. Del Taco, Inc.*, No. 04CV0097J(RBB), 2005 U.S. Dist. LEXIS 39234, *7 (S.D. Cal. June 23, 2005) (Jones, J.); *see also Causeway Med. Suite v. Foster*, No. , 2000 U.S.
(continued...)

figures cited in the text of Plaintiffs' Motion, Plaintiffs' ultimate lodestar calculation totals $62,753.50.  OMS argues that this figure is too high, both because the number of hours reported includes time that is unnecessary and duplicative and because Plaintiffs' attorneys' hourly rates are too high.   Accordingly, OMS argues that Plaintiffs should instead recover fees totaling $30,445.80.

### a.    *Hours Expended*

As to whether the hours expended by Plaintiffs' counsel were reasonable, OMS primarily argues that Tomlinson's fees should be discounted, as his efforts were unnecessary and largely duplicated those of Karni, who OMS characterizes as Plaintiffs' primary counsel.  *See, e.g.*, *Sanders v. Barnhart*, No. 04-10600, U.S. App. LEXIS 20289 (5th Cir. Sept. 19, 2005) (per curiam); *see also Baldridge v. Nicholson*, 10 Vet. App. 227 (2005) (analyzing at length a request for attorneys' fees where multiple attorneys collaborated on the case).  OMS also objects to dozens of other charges detailed on Plaintiffs' bill,[6] and argues that Plaintiffs should recover only 173.40 of the 329.35 hours claimed.

Plaintiffs' time records are extremely specific and detailed.  The Court has

---

[5]    (...continued)
Dist. LEXIS 6472, *10 (E.D. La. May 2, 2000) (Berrigan, J.) (setting $50 per hour as the compensable rate for clerical work in an action to recovery attorneys' fees).

[6]    *See* Defendant's Response [Doc. # 48], Exh. 1: "Fee Statement" (OMS has marked the billing entries with which it disagrees as "clerical, not billable," "duplicative," "unreasonable amount of time," or "not necessary.").

reviewed the bill and OMS's objections carefully.  Most of the hours billed appear justified.  Plaintiffs' counsel  properly recognized that caution is warranted when a court considers awarding attorneys' fees generated by multiple lawyers.  The Court is persuaded that the work allocation between associate attorney Karni and Tomlinson was appropriate, at least until she left his employ in July 2007, at which time Tomlinson performed some tasks that an associate could and should have completed.

The Court is unpersuaded by OMS's complaints that Plaintiffs' attorneys spent "unreasonably" lengthy periods on certain tasks, that they duplicated their efforts, and that the attorneys spent time on tasks that were not necessary.  First, Plaintiffs' billing statements demonstrate that counsels' work on this case was done efficiently. Second, as Plaintiffs point out, lead counsel Tomlinson "duplicated" only a fraction of the work completed by Karni.  He did not charge for the majority of conferences with Karni; both attorneys' time was charged for only limited activities, such as rare conferences at crucial times in the case, their clients' depositions, mediation, and final negotiations.  These tasks involved work or events where both attorneys' input was important and billing for both counsel was appropriate for efficient and effective prosecution of this litigation.  Further, Tomlinson's occasional review and editing of the written work of his less experienced and less expensive associate was warranted.

The Court also finds that most of Tomlinson's contributions to this litigation—performed as a highly compensated, experienced partner—were reasonable, valuable, and necessary.  The number of hours he spent before Karni left his firm were amply justified at his full hourly billing rate.  However, thereafter, many of the tasks he performed could have been done by a less experience attorney, clerical staff, or a secretary.  Thus, the billing rate for this time will be reduced, as discussed in the next section.

Further, a close review of the billing statement convinces the Court that most of Karni's work—including the hours she spent on drafting, researching, conferring with her clients and opposing counsel, and preparing for and attending depositions—was necessary and justified.  However, there are 2.3 hours billed for clerical work that should have been performed by a secretary. As discussed more fully in the next section, these hours will not be compensated at the associate attorney billing rate.

Therefore, with regard to the number of hours billed by Plaintiffs' counsel, the Court finds no reason to eliminate any of the time not already conceded by Plaintiffs from the lodestar figure.  Notwithstanding the figures cited by Plaintiffs in their Motion, the Court will award fees for 111.25 hours worked by Tomlinson, 102.15 hours worked by Karni, and 98.40 hours worked by the legal assistants and law clerks.

### b.   *Attorneys' Hourly Rates*

OMS disputes the hourly rates charged by Tomlinson and Karni—$300 and $175 per hour, respectively.  In support of their position, Plaintiffs have offered the affidavit of a local attorney who has practiced extensively in the area of consumer law and who states that Tomlinson's $300 per hour rate is reasonable given his skill and comparable market rates.[7]  Similarly, Plaintiffs offer the affidavit of another local attorney practicing in this area who states that Karni could reasonably charge up to $200 per hour, given her skill and reputation,[8] as well as a letter from a local attorney who detailed a study he conducted of prevailing rates for consumer attorneys in south Texas and concluded that Karni's proposed rate is "appropriate."[9]  Plaintiffs also offer affidavits from Tomlinson and Karni[10] and citations to recent cases in which their clients have been awarded fees comparable to those sought in this case for Tomlinson's and Karni's services.[11]

---

[7]     *See* Plaintiffs' Motion [Doc. # 42], Exh. A: "Declaration of Matthew B. Probus."

[8]     *See* Plaintiffs' Reply [Doc. # 52], Exh. B: "Declaration of Michael W. Weston."

[9]     *See* Letter from James T. McMillen [Doc. # 53].

[10]    *See* Plaintiffs' Motion [Doc. # 42], Exh. B: "Declaration of Richard Tomlinson"; Exh. C: "Declaration of Dana Karni."

[11]    *See* Plaintiffs' Motion [Doc. # 42], Exh. B: "Declaration of Richard Tomlinson" (citing *Compton v. Jay A. Taylor, P.C.*, No. H-05-4116, 2006 U.S. Dist. LEXIS 43402 (S.D. Tex. June 27, 2006) (Hittner, J.); Order Granting Motion for Attorneys' Fees and Costs [Doc. # 36], *Barber v. Drive Fin. Servs., L.P.*, No. 4:06-CV-0068 (S.D. Tex. May 3, 2007) (Lake, (continued...)

In further support, Plaintiffs assert that this case involved "unusual" issues associated with Plaintiffs' emotional distress claim.[12]  However, OMS argues that this case involved "standard statutory claims in the consumer law arena that do not require complex legal analysis" and that litigation of Plaintiffs' emotional distress claims involved only limited discovery and required no special skills.[13]  Thus, OMS asserts that Tomlinson's rate should be $250.00 per hour and Karni's should be $150.00 per hour.  However, OMS offers no evidence establishing these as reasonable rates for Tomlinson's and Karni's services.  *See Blum v. Stenson*, 465 U.S. 886, 892 n.5 (1984) (deeming waived the petitioner's objection to the lower court's award of attorneys' fees because "petitioner failed to submit to the District Court any evidence challenging the accuracy and reasonableness of the hours charged, or the fact asserted in the affidavits submitted by respondent's counsel" (internal citation omitted)).

The Court is persuaded by the record that $300 per hour for Tomlinson's time and $175 per hour for Karni's time are reasonable rates for their legal services. However, Tomlinson and Karni both billed at their full rates time that they in fact

---

11      (...continued)
        J.)); Plaintiffs' Reply [Doc. # 52],  Exhs. C & D: "Default Judgment [Doc. # 10],
        *Covarrubias v. Capital Recovery Servs., Inc.*, No. 4:07-CV-3274 (S.D. Tex. Feb. 20, 2008)
        (Lake, J.))" (awarding $1,000 in statutory damages and $3,879.73 in costs and fees for
        Tomlinson's work, billed at $325 per hour).

12      *See* Plaintiffs' Motion [Doc. # 42], at 17.

13      *See* Defendant's Response [Doc. # 48], at 9.

spent on clerical tasks.  Plaintiffs have conceded that some, but not all, of this time should be billed at a clerical rate of no less than $30 per hour.  Thus, OMS's objections to the attorneys' rates are overruled, except as to 0.55 hours of Tomlinson's billed time and 2.3 hour of Karni's billed time, which will be awarded at $30 per hour. Similarly, 28.10 hours of work performed by Tomlinson and Karni's assistants and clerks is more properly billed at $30, rather than the full billing rate of $75 per hour.

The Court also finds that some of Tomlinson's time spent after Karni left his employ in July 2007 was more properly performed by a lower compensated and/or less experienced attorney, rather than the lead partner on the case.  Specifically, the Court will authorize a rate of $200 per hour for 54.65 hours of Tomlinson's time spent after July 2007, rather than his full rate of $300 per hour.

Thus, the lodestar calculation is as follows:  Plaintiffs' attorneys and staff reasonably expended 311.80 hours on this litigation: 56.05 hours by Tomlinson, to be compensated at $300 per hour; 54.65 hours by Tomlinson at $200 per hour; 99.85 hours by Karni at $175 per hour; and 70.30 hours by legal assistants and law clerks, which should be compensated at $75 per hour.  The attorneys and their staff also spent 30.95 hours for purely clerical work which should be compensated at the rate of $30 per hour.  Thus, the lodestar figure is $51,419.50.

### 3.    *Johnson* Factors' Adjustment

Defendants, in addition to disputing Plaintiffs' lodestar figure, seek a downward adjustment of the lodestar. Plaintiffs assert that analysis of the *Johnson* factors supports, if anything, a modest upward adjustment. The Court concludes the lodestar as calculated above is the proper measure.

### a.      *Time and Labor*

This factor is subsumed in the lodestar calculation and does not alter the fee analysis. *See Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990) (citing *Sims v. Jefferson Downs Racing Ass'n*, 778 F.2d 1068, 1984 (5th Cir. 1985)).

### b.      *Novelty and Difficulty of Issues*

This factor does not warrant an adjustment in this case. The mental anguish features of this case were not so unusual as to classify this case as legally or factually novel.

### c.      *Skill Required*

Plaintiffs argue that they are entitled to a modest upward adjustment of the lodestar figure due to the possibility that their case would proceed to trial. They argue that this necessitated that they retain an attorney with jury trial experience and knowledge of the FDCPA and TDCA. The Court is unpersuaded that any upward adjustment on this basis is warranted. Plaintiffs' counsel are, at the rates they charge,

expected to be capable of taking cases to trial.[14]

### d.    *Preclusion of Other Employment*

Although Plaintiffs state conclusorily that "[g]iven the number of hours expended by Richard Tomlinson and . . . Dana Karni[,] this case must have precluded other requests for representation,"[15] they offer no additional argument or evidence in support.  This factor does not favor an upward adjustment to the lodestar figure.

### e.    *Customary Fee*

This factor has been considered during the lodestar calculation in the rate and hourly analysis.  Accordingly, it does not here effect any adjustment to the analysis. *See Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990) (citing *Sims*, 778 F.2d at 1984).

### f.    *Contingent Nature of Fee*

The parties agree that this factor is not significant to this analysis.

### g.    *Time Limitations*

The parties do not contend that any special time limitations were imposed in

---

[14]    OMS makes the meritless argument that its experience litigating against *pro se* plaintiffs suggests that no special skills are required to try these ordinary statutory claims.  However, OMS has not offered any evidence that *pro se* plaintiffs have had the success litigating cases under the FDCPA, TDCA, and DTPA that Plaintiffs enjoyed here.

[15]    Plaintiffs' Motion [Doc. # 42], at 17.

this case relevant to this analysis.

### h.   *Amount Involved and Results Obtained*

OMS argues at length that this factor, the "most critical factor" in the *Johnson* analysis, *Singer*, 324 F.3d at 829, supports a downward adjustment of the lodestar figure in this case.        In deciding whether a fee is excessive, the court must consider whether "the requested fees . . . bear a reasonable relationship to the amount in controversy . . . ."  *Northwinds Abatement v. Employers Ins.*, 258 F.3d 345, 354 (5th Cir. 2001) (citing *Jerry Parks Equip. Co. v. Southeast Equip. Co.*, 817 F.2d 340, 344 (5th Cir. 1987)); *see Hensley*, 461 U.S. at 436 (Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."); *see also Migis*, 135 F.3d at 1047–48.  However, disproportion between the amount of attorney(s)' fees sought and the damages recovered in the lawsuit does not alone "render the award of attorneys' fees excessive."  *Northwinds*, 258 F.3d at 355.

OMS asserts that Plaintiffs achieved only limited success in this case, having recovered $17,500 of the more than $62,000 they originally sought in actual and statutory damages.  However, even though Plaintiffs' did not recover the additional

$44,500 originally sought, the Court finds that Plaintiffs' achieved meaningful success.  Plaintiffs recovered a total of $15,500 of the $20,823 in *actual* damages originally sought under the FDCPA and TDCA.  Of this sum, 90% represented damages for Plaintiffs' emotional distress, a comparatively high amount.[16]  Plaintiffs also obtained the full amount of statutory damages available under law, $1,000 each, *see* 15 U.S.C. § 16692k(a)(2)(A), and counsel were able to obtain for Plaintiffs a waiver of $532 in bank fees that had resulted from Plaintiffs' dispute with OMS.  Though Plaintiffs did not recover the full amount sought, counsel did achieve a very favorable result.

It is recognized that Plaintiffs are seeking approximately three and a half times their recovery in attorneys' fees and costs. Plaintiffs cite numerous cases where the proportion of attorneys' fees recovered by FDCPA and TDCA plaintiffs to the damage award was far higher.  The disparity between the final award of damages and the attorneys' fees and expenses sought in this case is not unusual and is necessary to enable individuals wronged by debt collectors to obtain competent counsel to prosecute claims.[17]  Thus, this *Johnson* factor does not warrant any adjustment to the lodestar figure.

---

[16]    *See Id.*, at 18 (citing FDCPA cases with emotional distress awards ranging from $100 to $5,000).

[17]    *See* Plaintiffs' Reply [Doc. # 52], at 21 (citing FDCAP cases in which the award of attorneys' fees and costs was up to seventy times the plaintiffs' recovery).

### i.    *Experience, Reputation, and Ability of Counsel*

The Court considered this factor in determining Tomlinson's and Karni's reasonable hourly rates.  Thus, the experience, reputation and ability of counsel are not considered again in the adjustment analysis. *See Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990) (citing *Sims*, 778 F.2d at 1984).

### j.    *Desirability of Case*

The parties agree that this factor is not relevant to this case.

### k.    *Nature and Length of Professional Relationship*

The parties agree that this factor is not material to this analysis.

### l.    *Awards in Similar Cases*

Finally, OMS argues that the total fees awarded in more complex debt collection cases were similar to those here, and thus the fees in this simpler case should be lower than the lodestar figure.  Plaintiffs concede that while one of cases in which Tomlinson's $300 per hour rate and Karni's $175 per hour rate were deemed reasonable was more complex than the case at bar, other cases in which the requested rates and fees were approved are similar in complexity to the case here.  Thus, they argue that their fee request is justified.  The Court agrees with Plaintiffs.  This factor does not warrant any adjustment to the fees calculated under the lodestar analysis.

### B.    <u>Costs and Expenses</u>

Rule 54(d) of the Federal Rules of Civil Procedure states that "costs—other than attorney's fees—should be allowed to the prevailing party."  Indeed, the Fifth Circuit strongly presumes that costs will be awarded to a prevailing party.  *See Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1017 (5th Cir. 1992) (citing *Sheets v. Yamaha Motors Corp.*, 891 F.2d 533, 539 (5th Cir. 1990)).  By statute, however, federal courts may award only those costs itemized in 28 U.S.C. § 1920, absent explicit statutory or contractual authorization to the contrary.  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444–45 (1987); *see also Mota v. Univ. of Tex. Hou. Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001).  Accordingly, recoverable costs include:

> (1)  Fees of the clerk and marshal; (2)  Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3)  Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5)  Docket fees . . . ; (6)  Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services . . . .

28 U.S.C. § 1920; *Mota*, 261 F.3d at 530.

The Court has discretion in determining an appropriate award of costs.  *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000).  However, while a court "may decline to award the costs listed in the statute[, it] may not award costs omitted from the list."  *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993).  Further, the Court

is to give "careful scrutiny" to the items proposed by the prevailing party, *Kellstrom*, 50 F.3d at 335, though it is free to decline to award costs where the expenses are not deemed to have been "reasonably necessary" to the litigation. *See, e.g.*, *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 257–58 (5th Cir. 1997); *see also Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1099 (5th Cir. 1982).

In this case, Plaintiffs seek $5,092.86 in costs and expenses, which includes filing fees, fees for service of process, LEXIS/NEXIS online research charges, postage and delivery charges, copying, deposition reporting fees, and mediator fees.  OMS objects to $645.26 of this total sought by Plaintiffs.  Specifically, OMS objects to various copy, fax, and postage charges, a service of process charge, and a portion of the LEXIS charge.  Plaintiffs "concede that charges for faxing, courthouse delivery services, overnight courier services[,] and videotape duplication are not compensable,"[18] but claim that the costs of photocopies and service of process fees should be awarded.  Thus, having conceded some costs Plaintiffs now request $4,723.97, $276.37 of which remains disputed by OMS.  The disputed expenses are for online research, copying, and a subpoena fee.  Each of these expenses was appropriate and necessary to prosecution of this case, if not preparation for trial. Therefore, the Court finds the $4,723.97 in remaining requested costs are reasonable

---

[18]     *See* Plaintiffs' Reply [Doc. # 52], at 22.

and will be awarded.

III.   **CONCLUSION**

Based on the foregoing, it is hereby

**ORDERED** that Plaintiffs' Motion for Attorney Fees and Costs [Doc. # 42] is

**GRANTED in part and DENIED in part**.  Plaintiffs are awarded fees and costs

totaling **$56,143.47**.

SIGNED at Houston, Texas this **24**th day of **March,  2008.**

Nancy F. Atlas
United States District Judge